UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIMAS O'CAMPO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RAGHBIR SINGH GHOMAN, dba QUICK SHOP 2; GHOMAN'S PROPERTIES, LLC,<br><br>　　　　　Defendants. | No. 2:08-cv-1624 KJM DB PS<br><br>FINDINGS AND RECOMMENDATIONS |

This matter came before the undersigned on March 24, 2017, pursuant to Local Rule 302(c)(19) and Local Rule 302(c)(21), for hearing of plaintiff's motion for default judgment. (ECF No. 97.) Attorney Stephanie Ross appeared telephonically on behalf of the plaintiff. No appearance was made by, or on behalf of, either defendant. At that time oral argument was heard and the motion was taken under submission.

Having considered all written materials submitted with respect to the motion, and after hearing oral argument, the undersigned recommends that the motion for default judgment be granted as explained below.

BACKGROUND

Plaintiff Dimas O'Campo initiated this action on July 15, 2008, by filing a complaint and paying the required filing fee. (ECF No. 1.) Defendants filed an answer on October 10, 2008.

(ECF No. 5.) On January 27, 2012, plaintiff was granted leave to file an amended complaint. (ECF No. 26.) On February 6, 2012, plaintiff filed a first amended complaint. (ECF No. 27.) Defendants filed an answer on March 19, 2012. (ECF No. 31.)

On February 8, 2013, plaintiff filed a motion for summary judgment. (ECF No. 42.) Defendants' attorney could not be served electronically with notice of plaintiff's motion and the California Bar Website reflected pending disciplinary charges against that attorney. (ECF No. 43.) On May 2, 2013, electronic service on defendants' counsel was again unsuccessful and the California Bar Website reflected that defendants' counsel was no longer eligible to practice law in California. (ECF No. 58.)

On July 29, 2013, the assigned District Judge issued an order denying plaintiff's motion for summary judgment, dismissing the first amended complaint with prejudice, and closing the case. (ECF No. 60.) Therein, the assigned District Judge explained that plaintiff's first amended complaint failed to establish that plaintiff had standing to seek injunctive relief under the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 *et seq.*). (Id. at 7.) Plaintiff filed a notice of appeal on August 28, 2013. (ECF No. 62.)

In an ordered filed in this court on November 9, 2015, the Ninth Circuit affirmed the assigned District Judge's ruling that plaintiff's first amended complaint failed to establish standing. (ECF No. 67 at 3.) The Ninth Circuit, however, vacated the dismissal of the first amended complaint with prejudice and remanded the matter for entry of an order dismissing the first amended complaint without prejudice. (Id. at 4.) That order also stated that plaintiff could request leave to file a second amended complaint. (Id.)

On December 11, 2015, the assigned District Judge referred the matter to the previously assigned Magistrate Judge.[1] (ECF No. 71.) On January 11, 2016, the previously assigned Magistrate Judge issued an order dismissing plaintiff's first amended complaint without prejudice, permitting plaintiff to file a motion seeking leave to file a second amend complaint, and ordering the Clerk of the Court to serve a copy of the order on the defendants by mail at their

---

[1] On August 2, 2016, the matter was reassigned from the previously assigned Magistrate Judge to the undersigned. (ECF No. 85.)

2

last known addresses. (ECF No. 72.)

On January 19, 2016, plaintiff filed a motion for leave to file a second amended complaint. (ECF No. 75.) Plaintiff, however, failed to serve the defendants with notice of the motion seeking leave to amend. (ECF No. 76.) On March 21, 2016, plaintiff filed an amended motion for leave to file a second amended complaint. (ECF No. 77.) On May 19, 2016, plaintiff's motion was granted. (ECF No. 82.) Plaintiff was ordered to serve the second amended complaint on the defendants in compliance with Rule 4 of the Federal Rules of Civil Procedure. (Id. at 2.)

Plaintiff filed a second amended complaint on May 19, 2016. (ECF No. 83.) Therein, plaintiff alleges that defendants violated the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 *et seq.*), the California Disabled Persons Act, the California Unruh Civil Rights Act, and denied plaintiff full and equal access to public facilities. The second amended complaint seeks injunctive and declaratory relief, statutory damages, attorneys' fees, costs, and interest. (Sec. Am. Compl. (ECF No. 83) at 12.)

On November 30, 2016, the undersigned issued an order to show cause as to why this action should not be dismissed due to plaintiff's lack of prosecution. (ECF No. 87.) Plaintiff's counsel failed to respond to the order to show cause. Instead, on December 19, 2016, plaintiff requested entry of defendants' default, (ECF No. 88), and defendants' default was entered on December 20, 2016. (ECF No. 89.)

Accordingly, on January 12, 2017, the undersigned issued a second order to show cause as to why this action should not be dismissed for lack of prosecution and why plaintiff's counsel should not be sanctioned for failing to comply with the November 30, 2016 order to show cause. (ECF No. 90.) Plaintiff filed a response to that order on January 13, 2017. (ECF No. 91.)

On January 17, 2017, plaintiff filed a motion for default judgment. (ECF No. 92.) Plaintiff served defendants with a copy of the motion for default judgment. (ECF No. 92-4.) Neither defendant filed an opposition to plaintiff's motion. (ECF No. 93.) On February 16, 2017, the undersigned ordered plaintiff to file a supplemental memorandum. (ECF No. 95.) Plaintiff filed the supplemental memorandum on March 10, 2017. (ECF No. 96.)

3

On March 24, 2017, plaintiff's appeared before the undersigned for hearing of plaintiff's motion for default judgment. (ECF No. 97.) There was no appearance by, or on behalf of, either defendant. Due to plaintiff's failure to comply with the February 16, 2017 order, plaintiff was again ordered to submit further briefing within seven days. (ECF No. 98.) Plaintiff filed a response on March 31, 2017. (ECF No. 99.)

LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default judgment. Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Pope v. United States, 323 U.S. 1 (1944); Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also DirectTV v. Huynh, 503 F.3d 847, 851 (9th Cir. 2007); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Where damages are liquidated, i.e., capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing. Dundee, 722 F.2d at 1323. Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means. Dundee, 722 F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion. Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d. 1089, 1092 (9th Cir. 1980). The court is free to consider a variety of factors in exercising its discretion. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Among the factors that may be considered by the court are

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

ANALYSIS

I. **Whether Default Judgment Should Be Entered**

   A. **Applicable Legal Standards**

Plaintiff's motion for default judgment seeks judgment only on the second amended complaint's claims for violation of Title III of the ADA and the California Unruh Civil Rights Act. (Pl.'s MDJ (ECF No. 92-1) at 17.[2]) "Congress enacted the ADA 'to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities.'" Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc., 603 F.3d 666, 669 (9th Cir. 2010) (quoting 42 U.S.C. § 12101(b)(2)). "Title III of the ADA prohibits discrimination in public accommodations, stating that '[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.'" Kohler v. Bed Bath & Beyond of California, LLC, 780 F.3d 1260, 1263 (9th Cir. 2015) (quoting Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007)).

With respect to an existing facility, discrimination includes "a failure to remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Removal is readily achievable where it is "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). "To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." Molski, 481 F.3d at 730.

"Damages are not an available remedy to individuals under Title III of the ADA; individuals may receive only injunctive relief." Ervine v. Desert View Regional Medical Center Holdings, LLC, 753 F.3d 862, 867 (9th Cir. 2014). "[A]n ADA plaintiff can establish standing to

---

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

sue for injunctive relief either by demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 944 (9th Cir. 2011) (en banc).

The Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). Moreover, the California Unruh Act provides that a "violation of the right of any individual under the federal Americans with Disabilities Act of 1990 shall also constitute a violation of this section." Cal. Civ. Code § 51(f) (citation and footnote omitted).

**B. Analysis**

Here, the factual allegations of plaintiff's second amended complaint, taken as true pursuant to the entry of default against the defendants, establish the following. Plaintiff suffers from severe brain damage, which affects his ability to walk, talk, see and stand, and requires the use of a cane when traveling in public. (Sec. Am. Compl. (ECF No. 83) at 3.) Defendants own and operate the Quik Shop 2 ("Quick Shop") at 102 Table Mountain Boulevard, in Oroville, California. (Id. at 2.)

**1. The Quick Shop**

The Quick Shop is an establishment open to the public, intended for nonresidential use and whose operation affects commerce. (Id. at 3.) Plaintiff prefers to obtain his gasoline at this establishment because it is on his route to the Roseville swap meet which he visits once a month. (Id. at 5.) However, plaintiff visited the Quick Shop and encountered barriers that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the Quick Shop. (Id.)

Those barriers included, but are not limited to:

1. The tow away signage posted is not correct;
2. The signage at the disabled parking stall is not correct;

3. The signage at the van accessible disabled parking stall is not correct;

4. The International Symbol of Accessibility ("ISA") painted in the disabled parking stalls (including the van accessible stall) is too small;

5. The disabled parking stalls and adjacent access aisles are not the correct size;

6. The platform of the bottom of the ramp leading to and from the Quick Shop is not 60 inches by 60 inches;

7. There is only 18 inches from the open entrance door to the start of the ramp;

8. There is no notification to disabled patrons at the gas pumps to indicate how they can acquire assistance;

9. There is no ISA to the side of the entrance door to indicate that the Quick Shop is accessible to the disabled;

10. The entrance door's opening is too narrow;

11. The condiments near the "Slurpee" machine are located too high and out of the required reach range limits;

12. The restroom door requires more than five (5) pounds of force to operate;

13. The flush valve is not located on the wide side of the water closet;

14. The toilet tissue dispenser has sharp edges on each end;

15. The toilet tissue dispenser protrudes into the clear floor and maneuvering space needed to access the water closet;

16. The coat hook is mounted at more than 40 inches from the floor; and

17. There is insufficient strike side clearance when leaving the restroom.

(Id. at 3-5.)

Plaintiff was deterred from visiting the Quick Shop because he knew that the establishment's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as himself). (Id. at 5.) Plaintiff continues to be deterred from visiting the Quick Shop because of the future threats of injury created by these barriers. (Id.) Plaintiff would return to the Quick Shop if the barriers were removed and intends to return to the Quick Shop on his next trip to Roseville. (Id.)

Quick Shop was aware that areas of the establishment were inaccessible and has the financial resources to remove the barriers without much difficulty or expense. (Id.) Quick Shop, however, refused to do so. (Id.) During all relevant times, Quick Shop possessed sufficient control and authority to modify the Quick Shop to remove the barriers. (Id. at 6.)

The second amended complaint and summons were served upon the defendants. (ECF No. 84.) In this regard, the undersigned finds that the defendants were properly served with the complaint and that the Clerk properly entered the default of the defendants. (ECF No. 89.) Defendants were also served with plaintiff's application for default judgment. (ECF No. 92-4.) Despite being served with process and all papers filed in connection with plaintiff's motion for default judgment, defendants failed to respond to plaintiff's second amended complaint and to plaintiff's motion for default judgment.

### 2. **Application of Eitel Factors**

After weighing the Eitel factors, the undersigned finds that the material allegations of the second amended complaint are sufficient and establish the merits of plaintiff's substantive claims.[3] Moreover, plaintiff will be prejudiced if default judgment is denied because plaintiff has no other means for forcing defendants to comply with the applicable statutes. Although plaintiff's motion for default judgment seeks $165,694.54 in total damages, fees, and costs, the undersigned will recommend a significantly lower award.

Moreover, in light of the entry of default against the defendants, there is no apparent possibility of a dispute concerning the material facts underlying the action. Nor is there any indication that defendants' default resulted from excusable neglect, since defendants were aware of this action, were properly served with plaintiff's pleading as well as with plaintiff's request for entry of default, and motion for default judgment. (ECF Nos. 84, 88 & 92-4.) Thus, defendants had ample notice of plaintiff's intent to pursue a default judgment against them.

Although public policy generally favors the resolution of a case on its merits, defendants' failure to appear and defend against plaintiff's claims has made a decision on the merits

---

[3] Eitell, 782 F.2d 1470.

impossible in this case. Because most of the Eitel factors weigh in plaintiff's favor, the undersigned, while recognizing the public policy favoring decisions on the merits, will recommend that default judgment be entered against the defaulted defendants. See Johnson v. Derylo, No. CIV 11-2335 MCE CKD, 2012 WL 1458116, at *1 (E.D. Cal. Apr. 26, 2012) (recommending grant of default judgment in factually similar matter); Johnson v. Henson, No. CIV S-09-2286 KJM EFB, 2011 WL 5118594, at *1-*5 (E.D. Cal. Oct. 27, 2011) (same); Johnson v. Huynh, No. CIV S-08-1189 JAM DAD, 2009 WL 2777021, at *1-*3 (E.D. Cal. Aug. 27, 2009) (same).

**II.     Terms Of Judgment To Be Entered**

**A.     Statutory Damages**

After determining that entry of default judgment is warranted, the court must next determine the terms of the judgment. See Landstar Ranger, Inc. v. Parth Enterprises, Inc., 725 F.Supp.2d 916, 920 (C.D. Cal. 2010) ("If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the 'amount and character' of the relief that should be awarded."). Plaintiff's motion for summary judgment seeks $12,000 in statutory damages. (Pl.'s MDJ (ECF No. 92-1) at 26.)

"Unlike the ADA, the Unruh Act permits the recovery of monetary damages, in the form of actual and treble damages or statutory damages of $4,000 per violation." Vogel v. Rite Aid Corp., 992 F.Supp.2d 998, 1011 (C.D. Cal. 2014). In support of the request for $12,000 in statutory damages, plaintiff has submitted a declaration stating that plaintiff actually visited the Quick Shop on one occasion and was deterred from visiting the Quick Shop on at least two additional occasions. (O'Campo Decl. (ECF No. 92-3) at 2.) Pursuant to California Civil Code § 55.56(b) "[a] plaintiff is denied full and equal access only if the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion."

Accordingly, the undersigned with recommend plaintiff be awarded $12,000 in statutory damages.

////

**B. Injunctive Relief**

Plaintiff's motion for summary judgment also seeks injunctive relief compelling defendants to remove the architectural barriers at the Quick Shop. (Pl.'s MDJ (ECF No. 92-1) at 27-28.) Having found that plaintiff has established that defendants violated the ADA, the undersigned recommends that plaintiff's request for injunctive relief be granted, and defendants be ordered to correct the violations at the Quick Shop identified in plaintiff's second amended complaint, to the extent defendants have the legal right to do so, so that the facility is readily accessible to and usable by individuals with disabilities. See Wander v. Kaus, 304 F.3d 856, 858 (9th Cir. 2002) ("Damages are not recoverable under Title III of the ADA -- only injunctive relief is available for violations of Title III."); Vogel, 992 F.Supp.2d at 1015 ("Injunctive relief compelling Knight to remove barriers at Rite Aid to the extent he has the legal right to do so under the lease and state law so that the facility is readily accessible to and usable by individuals with disabilities is therefore appropriate.").

**C. Attorneys' Fees**

Plaintiff's motion for default judgment seeks an award of $152,307.30 in attorneys' fees. (Pl.'s MDJ (ECF No. 92-1) at 29-30.) Pursuant to 42 U.S.C. § 12205, a party that prevails on claims brought under the ADA may recover reasonable attorney's fees and costs in the court's discretion. The fee award is calculated using the lodestar method. Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149, n.4 (9th Cir. 2001).

"The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expected on the litigation by a reasonable hourly rate." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008); see also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The lodestar is deemed to be presumptively reasonable, though the district court has the discretion to consider an upward or downward adjustment. Camacho, 523 F.3d at 978.

**1. Reasonable Hourly Rates**

In assessing applications for attorney's fees the reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant legal community. Blum v. Stenson, 465 U.S. 886, 895 (1984); see also Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir.

1    2011) ("We have held that '[i]n determining a reasonable hourly rate, the district court should be

2    guided by the rate prevailing in the community for similar work performed by attorneys of

3    comparable skill, experience, and reputation.'") (quoting Chalmers v. City of Los Angeles, 796

4    F.2d 1205, 1210-11 (9th Cir. 1986)). It is also the general rule that the "relevant legal

5    community" is the forum district and that the local hourly rates for similar work should normally

6    be employed. See Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013); Prison

7    Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010); Gates v. Rowland, 39 F.3d

8    1439, 1449 (9th Cir. 1994); Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).

9    　　　　Here, plaintiff seeks an hourly rate of $480 for lead counsel Scottlynn J. Hubbard and for

10   senior counsel Lynn Hubbard ("Hubbards"). (Pl.'s MDJ (ECF No. 92-1) at 29.) In support of

11   this request, counsel has submitted evidence establishing that the Hubbards are attorneys of

12   considerable skill, experience, and reputation with respect to the litigation of ADA actions.

13   (Scottlynn J. Hubbad Decl. (ECF No. 92-2) at 3-4; Scottlynn J. Hubbard Decl. (ECF No. 96-1) at

14   2-12.) Plaintiff also relies on Dodson v. Albertson's Inc., No. CIV. S-06-1489 LKK DAD, 2008

15   WL 298823 (E.D. Cal. Feb. 1, 2008), in which plaintiff's counsel was awarded a rate of $350 per

16   hour. Id. at *3.

17   　　　　The Dodson opinion, however, is over nine years old. In this regard, the court must

18   determine the current rate in this district. See U.S. v. $28,000.00 in U.S. Currency, 802 F.3d

19   1100, 1107 (9th Cir. 2015) ("The district court also erred by relying on an award almost nine

20   years old in determining the prevailing market hourly rate."); Bell v. Clackamas County, 341 F.3d

21   858, 869 (9th Cir. 2003) ("We hold, however, that it was an abuse of discretion in this case to

22   apply market rates in effect more than two years before the work was performed.").

23   　　　　In this regard, the overwhelming, if not unanimous, weight of authority establishes that

24   the current prevailing market hourly rate in this community for similar work performed by

25   attorneys of comparable skill, experience, and reputation as the Hubbards is $250-$300 per hour.

26   See Chapman v. Pier 1 Imports (U.S.), Inc., No. 2:04-cv-1339 MCE AC, 2017 WL 999253, at *3

27   (E.D. Cal. Mar. 15, 2017) ("While the Hubbards are undoubtedly experienced in disability access

28   litigation, they are no more so than other counsel who have been awarded hourly rates in that

range.").

Accordingly, the undersigned finds that a reasonable hourly rate for the work performed by attorneys Scottlynn J. Hubbard and Lynn Hubbard is $300 per hour. See Johnson v. Patel, No. 2:15-cv-2298 MCE EFB, 2017 WL 999462, at *3 (E.D. Cal. Mar. 15, 2017) ("No evidence has been presented in this proceeding that causes this Court to conclude that the prevailing Sacramento rate of $250-$300 as recently as two years ago has measurably increased."); McCarty v. Humphrey, No. 2:13-cv-0431 KJM AC, 2016 WL 4899194, at *5 (E.D. Cal. Sept. 15, 2016) ("As for Ms. Corfee, who has extensive experience and founded the law firm, the court finds $300 per hour to be an appropriate rate."); Johnson v. Patel, CIV. No. 2:14-2078 WBS AC, 2016 WL 727111, at *3 (E.D. Cal. Feb. 23, 2016) (WBS Order) (finding $300 reasonable rate for managing partner who litigated over 2,000 ADA cases over 20-year career); Johnson v. Iqbal, No. 2:15-cv-0191 KJM AC, 2016 WL 3407773, at *3 (E.D. Cal. June 21, 2016) ("Courts in this district have recently awarded Mr. Potter, who has focused mainly on disability issues in his twenty-plus years of practice, $300 an hour as an appropriate rate for his work in cases similar to this one."); Johnson v. San, No. 2:15-cv-162 JAM EFB, 2015 WL 7188245, at *5 (E.D. Cal. Nov. 16, 2015) ("Judges in this district have recently found that $300 an hour is a more appropriate rate for the work performed by plaintiff's counsel in cases similar to the instant case."); Kalani v. Statewide Petroleum, Inc., No. 2:13-CV-2287 KJM AC, 2014 WL 4230920, at *6 (E.D. Cal. Aug. 25, 2014) ("Courts have determined $300 to be a reasonable hourly rate for a lawyer with twenty years' experience in civil rights litigation, practicing in Sacramento.").

Plaintiff also seeks a rate of $350 per hour for the four associate attorneys who worked on this action—Khush Mehton, Stephanie Ross, Daniel Watts, and Peter Leonard. (Pl.'s MDJ (ECF No. 92-1) at 29.) These attorneys do not possess the same reputation and experience as the Hubbards. (Scottlynn J. Hubbard Decl. (ECF No. 92-2) at 5-6.) Given their experience, skill, and reputation, the undersigned finds that a reasonable hourly rate for their services is $200 per hour. See Chapman, 2017 WL 999253, at *3 (awarding plaintiff's attorneys "a $200 hourly award for associate attorneys"); Johnson v. Castro, No. 2:14-cv-2008 JAM CKD, 2016 WL 7324715, at *2 (E.D. Cal. Dec. 15, 2016) ("Recently, this Court and other judges in the Eastern District of

California have found the hourly rates of $300 for Potter and $150 for junior associates reasonable for disability access cases in the Sacramento legal community."); McCarty, 2016 WL 4899194, at *5 ("the court finds a reasonable rate is at the lower end for associates, $150 per hour").

Finally, plaintiff seeks an hourly rate of $120 for work performed by paralegals. (Pl.'s MDJ (ECF No. 92-1) at 29.) The undersigned finds that the reasonable hourly rate for work performed by paralegals in this district is $100 per hour. See Pointer v. Bank of America, N.A., No. 2:14-cv-0525 KJM CKD, 2016 WL 7404759, at *17 (E.D. Cal. Dec. 21, 2016) (finding reasonable rate of $75 per hour for paralegals); McCarty v. Humphrey, No. 2:13-cv-0431 KJM AC, 2016 WL 4899194, at *5 (E.D. Cal. Sept. 15, 2016) (awarding paralegal rates of $85 and $100 per hour); Joe Hand Promotions, Inc. v. Albright, No. CIV. 2:11-2260 WBS CMK, 2013 WL 4094403, at *3 (E.D. Cal. Aug. 13, 2013) ("According to the court's own research, the paralegal rate favored in this district is $75 per hour.").

### 2. **Hours Reasonably Expended**

A prevailing party is entitled to compensation for attorney time "reasonably expended *on the litigation*." Webb v. Board of Educ. of Dyer County, 471 U.S. 234, 242 (1985) (emphasis in original). The attorney's fee applicant bears the burden of establishing the appropriate number of hours expended. Hensley, 461 U.S. at 437; see also Jadwin v. County of Kern, 767 F.Supp.2d 1069, 1100 (E.D. Cal. 2011) ("The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked.").

Time is reasonably expended on the litigation when it is "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 561 (1986) (citation and internal quotations omitted). "'Hours expended on unrelated, unsuccessful claims should not be included in an award of fees.'" Webb v. Sloan, 330 F.3d 1158, 1168 (9th Cir. 2003) (quoting Sorenson v. Mink, 239 F.3d 1140, 1147 (9th Cir. 2001)).

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private

13

1 practice ethically is obligated to exclude such hours from his fee submission." Hensley, 461 U.S. at 434; see also Jankey v. Poop Deck, 537 F.3d 1122, 1132 (9th Cir. 2008) ("Consequently, although the district court erred in considering Plaintiff's protraction of the litigation in deciding whether to deny fees, the court may consider whether Plaintiff protracted the litigation in deciding whether to reduce fees."); Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008) ("The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client."); Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000) ("A district court should exclude from the lodestar amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary.").

"'[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of excluding non-compensable hours from a fee application.'" Gonzalez v. City of Maywood, 729 F.3d 1196, 1203 (9th Cir. 2013) (quoting Gates, 987 F.2d at 1399). "[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." Moreno, 534 F.3d at 1112. "In all other cases, however, the district court must explain why it chose to cut the number of hours or the lodestar by the specific percentage it did." Gonzalez, 729 F.3d at 1203.

Here, the undersigned finds that the number of reasonable hours awarded should be reduced by 10 percent. In this regard, plaintiff's motion for default judgment seeks compensation for 319.71 hours of attorney time and 7.45 hours of paralegal time expended on this action. (Pl.'s MDJ (ECF No. 92-1) at 29.) This amount of time far exceeds the usual expenditure of time seen in similar ADA cases coming before the court on motions for default judgment. See, e.g., Trujillo v. Ali, Case No. 1:16-cv-0694 LJO SKO, 2016 WL 6902313, at *10 (E.D. Cal. 2016) (roughly 25 hours expended through filing of motion for default judgment); Loskot v. D & K Spirits, LLC, No. 2:10-cv-0684 WBS DAD, 2011 WL 567364, at *4 (E.D. Cal. Feb. 15, 2011) (17.3 hours expended through filing of motion for default judgment).

14

Much of the difference between this action and routine ADA cases that proceed to a motion for default judgment can be explained by the fact that the defendants in this action initially appeared and defended, forcing plaintiff's counsel to expend time conducting discovery, conferring with defense counsel, etc. Some of the difference, however, is explained by conduct attributable to plaintiff's counsel.

For example, on July 29, 2013, the assigned District Judge found that, in drafting plaintiff's first amended complaint, plaintiff's counsel failed to plead standing, resulting in plaintiff proceeding on an amended complaint that was "jurisdictionally defective." (ECF No. 60 at 3.) At that time attorney Lynn Hubbard had already spent at least 58 hours of attorney time on a motion for summary judgment—a motion which could not have been granted due to the pleading error. (Pl.'s Ex. A (ECF No. 92-2) at 20.)

Moreover, although plaintiff's appeal of the July 29, 2013 order was partially successful, in that the Ninth Circuit found that the court erred in dismissing the amended complaint with prejudice, the Ninth Circuit found that the court "did not err in dismissing O'Campo's complaint sua sponte, as it may dismiss a case for lack of jurisdiction without giving notice to the parties." O'Campo v. Ghoman, 622 Fed. Appx. 609, 610 (9th Cir. 2015). Attorney Scottlynn Hubbard expended 90 hours of attorney time on plaintiff's opening appellant brief. (Pl.'s Ex. A (ECF No. 92-2) at 22.)

On January 19, 2016, plaintiff filed a motion to amend the first amended complaint. (ECF No. 75.) Attorney Scottlynn Hubbard expended 17 hours on the drafting of that motion, (Pl.'s Ex. A (ECF No. 92-2) at 24), despite the fact that the motion was three pages, the proposed second amended complaint was only twelve pages, and the proposed second amended complaint was substantially similar to the first amended complaint.[4] Compare ECF No. 27 with ECF No. 75-1.

On February 17, 2016, plaintiff's counsel appeared for hearing of plaintiff's motion to amend before the previously assigned Magistrate Judge. (ECF No. 76.) The hearing was continued due to plaintiff's failure to serve the defendants with notice of the motion. On March

---

[4] It appears that the drafting of the original complaint took only one hour. (Pl.'s Ex. A (ECF No. 92-2) at 11.)

21, 2016, plaintiff filed an amended motion to file a second amended complaint.  (ECF No. 77.)
With the exception of a change to the date for the hearing of the motion, it appears that the
amended motion to file a second amended complaint was nearly identical to the original motion
to amend the complaint.  Compare ECF No. 75 with ECF No. 77.  Nonetheless, attorney
Scottlynn Hubbard expended an additional 18 hours of attorney time on the preparation and filing
of the amended motion to file a second amended complaint.  (Pl.'s Ex. B. (ECF No. 92-2) at 24.)

Accordingly, the undersigned recommends that plaintiff's requested number of hours be reduced by ten percent.

### 3.  **Lodestar**

As noted above, plaintiff seeks a total fee award of $152,307.30, based on the following calculations:

| | | | | | |
|---|---|---|---|---|---|
| Scottlynn Hubbard | $ 480.00 | x | 191.38 hours | = | $ 91,862.40 |
| Lynn Hubbard | $ 480.00 | x | 112.58 hours | = | $ 54,038.40 |
| Khush Mehton | $ 350.00 | x | 5.00 hours | = | $ 1,750.00 |
| Stephanie Ross | $ 350.00 | x | 4.25 hours | = | $ 1,487.50 |
| Daniel Watts | $ 350.00 | x | 6.00 hours | = | $ 2,100.00 |
| Peter Leonard | $ 350.00 | x | .50 hours | = | $ 175.00 |
| Paralegals | $ 120.00 | x | 7.45 hours | = | $ 894.00 |

(Scottlynn J. Hubbard Decl. (ECF No. 92-2) at 9.)

Applying the lodestar analysis detailed above, the undersigned recommends that plaintiff be awarded $85,574 in reasonable attorneys' fees, calculated as follows:

| | | | | | |
|---|---|---|---|---|---|
| Scottlynn Hubbard | $ 300 | x | 172.24 hours | = | $ 51,672 |
| Lynn Hubbard | $ 300 | x | 101.32 hours | = | $ 30,396 |
| Khush Mehton | $ 200 | x | 4.5 hours | = | $ 900 |
| Stephanie Ross | $ 200 | x | 3.83 hours | = | $ 766 |
| Daniel Watts | $ 200 | x | 5.4 hours | = | $ 1,080 |
| Peter Leonard | $ 200 | x | .45 hours | = | $ 90 |
| Paralegals | $ 100 | x | 6.7 hours | = | $ 670 |

**D.     Costs**

Plaintiff's motion for default judgment seeks costs in the amount of $1,387.24. (Pl.'s MDJ (ECF No. 92-1) at 29; Pl.'s Ex. B (ECF No. 92-2) at 28-29.) "Both the Unruh Act and the ADA authorize a prevailing plaintiff to recover . . . costs." Vogel, 992 F.Supp.2d at 1016 (citing 42 U.S.C. § 12205; Cal. Civ. Code § 52(a)). Accordingly, the undersigned recommends that plaintiff be awarded $1,387.24 in costs.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's January 17, 2017 motion for default judgment (ECF No. 92) be granted;

2. Judgment be entered against the defendants;

3. Defendants be ordered to pay $12,000 in statutory damages;

4. Defendants be ordered to correct the violations at the Quick Shop identified in plaintiff's second amended complaint, to the extent that the defendants have the legal right to do so, so that the facility is readily accessible to and usable by individuals with disabilities;

5. Defendants be ordered to pay plaintiff $85,574 in attorneys' fees;

6. Defendants be ordered to pay plaintiff $1,387.24 in costs; and

7. This case be closed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after these findings and recommendations are filed, any party may file written objections with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.

////
////
////
////

17

The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 28, 2017

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.pro se\o'campo1624.mdj.f&rs